USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/21/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
MARYAM DAVANI HOSSEINI, :
:
Plaintiff, :
: 22-cv-01459 (LJL)
-v- :
: OPINION AND ORDER
MIILKIINA LLC and NADIA AZMY, :
:
Defendants. :
:
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Plaintiff Maryam Davani Hosseini ("Hosseini" or "Plaintiff") brings this action against Defendants Miilkiina LLC ("Miilkiina") and Nadia Azmy ("Azmy", and with Miilkiina, "Defendants"), alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 28 U.S.C. §§ 201 *et seq.,* and New York Labor Law ("NYLL"), and breaches of contract, the covenant of good faith and fair dealing, and fiduciary duty under New York state law. Dkt. No. 1 ("Complaint" or "Compl."). Plaintiff now moves for default judgment pursuant to Federal Rule of Civil Procedure 55(b). Dkt. No. 33. For the following reasons, the motion for a default judgment is denied.

## BACKGROUND

The following facts are drawn from Plaintiff's Complaint, Plaintiff's Declaration in Support of Request for a Default Judgment, Dkt. No. 34 ("Hosseini Decl."),[1] and Jacob Aronauer's Declaration in Support of Request for a Default Judgment, Dkt. No. 35 ("Aronauer Decl.").

---

[1] Plaintiff submitted a second identical declaration with her signature attached. Dkt. No. 38. For consistency, the Court cites to Dkt. No. 34.

Miilkiina is a New-York based "creative agency and multimedia platform." Compl. ¶¶ 16–17. Azmy is the CEO of Miilkiina and has been the CEO of Miilkiina since its inception. *Id.* ¶ 13. Plaintiff graduated from the Parsons School of Design at the New School in 2012 with a bachelor's degree in business administration and has 12 years of creative and brand strategy experience, both in the United States and abroad. Hosseini Decl. ¶¶ 3–5.

On April 4, 2020, Plaintiff inquired with Azmy about employment. Hosseini Decl. ¶ 6. On June 1, 2020, she received a job offer as Head of Strategy on Miilkiina's executive team and an employment agreement ("the Employment Agreement"), which she accepted the next day. Compl. ¶ 19; Hosseini Decl. ¶¶ 7, 9–10. Upon signing the Employment Agreement and its restrictive covenants, Defendants paid Plaintiff $500. Hosseini Decl. ¶ 20. Plaintiff left her previous full-time position to dedicate herself fully to Defendants. Compl. ¶ 22; Hosseini Decl. ¶ 11. During the course of Plaintiff's relationship with Defendants, she never received a New York State 195.1 hire form or W2 from Defendants. Hosseini Decl. ¶¶ 43, 45.

Plaintiff's offer letter indicated that she would be expected to work thirty hours per month (seven and a half hours per week) and would be compensated monthly at a value equal to $3,750, amounting to $45,000 per year. Compl. ¶ 21; *see also* Hosseini Decl. Ex. A (Employment Agreement). This compensation would be awarded solely in the form of company shares, at two and a half shares per month or "[.1%] of total company shares" monthly, adding up to 1.2% of the company's shares annually. Compl. ¶ 21; Hosseini Decl. Ex. A. Despite the agreement for Plaintiff to work seven and a half hours per week, she alleges that she worked thirty hours per week on average until October 2020. Hosseini Decl. ¶¶ 14, 19. She was not paid any money during this time. *Id.* ¶ 20.

2

In October 2020, Plaintiff alleges that she "worked a rate so productive and efficient" that Defendants increased her compensation to five shares per month, and she agreed to work more hours. Compl. ¶¶ 23–25; Hosseini Decl. ¶ 15. Plaintiff alleges that she worked more than forty hours per week from that point until the end of her employment. Compl. ¶ 26; Hosseini Decl. ¶ 16. Although Plaintiff requested that Azmy update her Employment Agreement to reflect her increased compensation and hours as well as a formalized equity agreement, Azmy never did so. Compl. ¶¶ 27–28; Hosseini Decl. ¶¶ 17–18. Plaintiff believes that the agreement was reflected in the "shareholder file" of Miilkiina. Compl. ¶ 28; Hosseini Decl. ¶ 18.

From October 2020 until February 2021, Defendants did not pay Plaintiff any monetary compensation. Hosseini Decl. ¶ 22. In February 2021, Plaintiff began receiving a $600 biweekly payment in addition to her accrual of five shares per month. Compl. ¶ 29. Plaintiff does not allege that the Parties contracted for these biweekly payments. During this time, Defendants took out withholdings for "a few" payments, but not for most. Hosseini Decl. ¶ 44. Defendants also never provided Plaintiff with a pay stub. *Id.*

In May 2021, Azmy informed Plaintiff that Miilkiina no longer had sufficient funds to pay her the biweekly payment. Compl. ¶ 32; Hosseini Decl. ¶ 29. Plaintiff, believing that other team members were still "being paid their promised rate," contacted Azmy on or around May 4, 2021, to ask about payment. Compl. ¶¶ 33–34; Hosseini Decl. ¶¶ 30–31. Defendants stopped paying Plaintiff on or about May 27, 2021. Hosseini Decl. ¶ 28. Azmy responded to Plaintiff's communication on June 24, 2021. Compl. ¶ 35; Hosseini Decl. ¶ 32. Plaintiff and Defendants, including Miilkiina Chief Marketing Officer Maria Al Sadek, subsequently had a conversation on Zoom, during which Plaintiff stated that she was not being paid for her labor and that her equity agreement had not been amended to address the lack of cash payments for a period of

months. Compl. ¶ 37; Hosseini Decl. ¶ 33. Azmy cried and apologized, reiterating that she did not have sufficient funds to pay Plaintiff. Compl. ¶ 38; Hosseini Decl. ¶ 34. On June 30, 2021, Azmy followed up by email, stating that:

> All agreed-upon compensation has been and will continue to be honored. In regards to the shareholder agreement, this has been a financial priority for us and we will be sure to tackle this in the next few months for clarity and transparency. I truly apologize that it has taken this long on our end to uphold this.

Compl. ¶ 39; Hosseini Decl. ¶ 35. On or around that same day, Plaintiff stopped performing work for Defendants. Hosseini Decl. ¶ 36. On July 22, 2021, Azmy emailed Plaintiff, stating that she would prepare accruals and other relevant documentation, but she never did. Compl. ¶¶ 41–42; Hosseini Decl. ¶¶ 37–38. On August 11, Plaintiff discovered that she was no longer able to access Miilkiina's company records or her corporate email and that the content she had created through the company-wide server had been removed. Compl. ¶¶ 43–44; Hosseini Decl. ¶¶ 41–42. Plaintiff states that she was never formally terminated by Defendants. Hosseini Decl. ¶ 40.

From the beginning of her employment in June 2020 until on or around July 2021, Plaintiff was paid $4,432.62, including the initial payment of $500 in consideration for signing the employment agreement. Compl. ¶ 30; Hosseini Decl. ¶¶ 25–26. She purports that she never received the monetary value of her shares. Compl. ¶ 31; Hosseini Decl. ¶ 27.

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on February 22, 2022. Dkt. No. 1. The Complaint was served on Miilkiina on March 3, 2022, Dkt. No. 7, and on Azmy on April 2, 2022, Dkt. No. 13. Defendants failed to file an answer or otherwise move with respect to the Complaint. The Clerk of Court then filed a Certificate of Default for Miilkiina on April 21, 2022, Dkt. No. 19, and another Certificate of Default for Azmy on April 28, 2022, Dkt. No. 25. Following notice of

Defendants' default, the Court adjourned the initial pretrial conference and set a briefing schedule for a motion for default judgment. Dkt. No. 27. Following several extensions, the Court issued a scheduling order setting a default judgment hearing on August 9, 2022, and an accompanying final briefing schedule for the motion. Dkt. No. 32. Plaintiff served both Defendants with the scheduling order, Dkt. Nos. 36–37, and filed her motion for default judgment and supporting declarations on August 16, 2022, Dkt. Nos. 33–35. A default judgment hearing was held on September 13, 2022. Defendants did not appear at the hearing.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also Hong v. Mommy's Jamaican Mkt. Corp.*, 2021 WL 4843912, at *1 (S.D.N.Y. Oct. 15, 2021).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); see Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137.

Because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P.

5

55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party later challenging the entry of a default judgment must satisfy the "good cause shown" standard in Fed. R. Civ. P. 55(c), which requires a court to "weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the non-defaulting party's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiff "must therefore substantiate [her] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017).

## DISCUSSION

Plaintiff brings nine claims against Defendants: claims for (1) "unpaid wages" under FLSA, Compl. ¶¶ 45–52; (2) unpaid wages under NYLL, *id.* ¶¶ 53–59; (3) failure to provide annual wage notices under NYLL, *id.* ¶¶ 60–63; (4) failure to provide wage statements under NYLL, *id.* ¶¶ 64–68; (5) breach of contract, *id.* ¶¶ 69–74; (6) breach of the covenant of good faith and fair dealing, *id.* ¶¶ 75–77; (7) breach of fiduciary duty, *id.* ¶¶ 78–81; (8) overtime

6

wages under FLSA, *id*. ¶¶ 87–93; and (9) unpaid overtime under NYLL, *id*. ¶¶ 94–98.  She also alleges these claims against Azmy individually.  *Id*. ¶¶ 82–86.  The Court concludes that Plaintiff has not adequately pleaded her unpaid wages and unpaid overtime claims under the FLSA and declines to exercise supplemental jurisdiction over the remaining claims.[2]

I.  **Liability**

   A.  **Plaintiff's Claim for "Unpaid Wages" under the FLSA**

Plaintiff's first claim under FLSA alleges, under a "Fair Labor Standards Act-Unpaid Wages" header, that Defendants failed "to pay Plaintiff her *agreed-upon and earned wages* . . . [in] violation of FLSA."  *Id*. ¶ 50 (emphasis added).  She further asserts that she is entitled to recover, *inter alia*, "compensation for *all* unpaid wages and unpaid supplemental wages."  *Id*. ¶ 52 (emphasis added).  Plaintiff fails to state a claim because no such cause of action exists under the FLSA.

"The FLSA statute requires payment of minimum wages and overtime wages only." *Nakhata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 201 (2d Cir. 2013); *see also Conzo v. City of New York*, 667 F. Supp. 2d 279, 283 (S.D.N.Y. 2009) ("The central provisions of the FLSA are its minimum wage and maximum hour provisions.").  While the FLSA sets a "national floor" in terms of working conditions, it "does not convert every suit involving the breach of an employment contract into a federal case."  *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d Cir. 1998) (internal quotation marks omitted); *see also Dunn v. Sederakis*, 143 F.

---

[2] The Court also notes that it is a close question as to whether Plaintiff has pleaded an employer-employee relationship under the FLSA.  In some ways, Plaintiff was more akin to an independent contractor, since she agreed to be paid exclusively in stock, Compl. ¶ 21, and her relationship with Defendants terminated without any communication from either side.  Hosseini Decl. ¶¶ 36, 40–42.  *See also Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058–59 (2d Cir. 1988) (articulating the standard for an employee versus an independent contractor).  The Court need not address this issue because, as discussed below, Plaintiff has not adequately pleaded her unpaid wages and unpaid overtime claims under the FLSA.

Supp. 3d 102, 110–11 (S.D.N.Y. 2015) ("Under settled law, the FLSA neither converts an employer's contract breach into a violation of federal law, nor generally federalizes disputes between employers and employees."). Courts in this Circuit thus have generally rejected plaintiffs' attempts to recover unpaid wages under the FLSA when such claims fall outside of the FLSA's minimum wage and overtime provisions. *See*, *e.g.*, *Barone v. Inspire Summits LLC*, 2022 WL 3139124, at *2 (E.D.N.Y. Aug. 4, 2022) ("The trouble for Plaintiffs is that the FLSA permits a claim for a failure to promptly pay *minimum wages*—not agreed-upon wages." (emphasis in original)); *McCormick v. Phinizy & Phebe Handmade LLC*, 2020 WL 13572189, at *5 (E.D.N.Y. Aug. 17, 2020) (denying a plaintiff's unpaid wages claim because the plaintiff sought to recover the salary contracted for rather than minimum wages).

Here, Plaintiff seeks to recover her compensation under the Employment Agreement as well as her "earned wages." Compl. ¶¶ 50, 52. There is no mention of the term "minimum wage" in the Complaint, save for a brief mention under a separate claim for overtime wages under the NYLL. *See id*. ¶ 96 ("Defendants have failed to pay Plaintiff one and one-half times the full minimum wage for all work in excess of forty hours per workweek."). Plaintiff also makes no mention of damages for minimum wage violations and Aronauer's Declaration includes no damages calculation that relies on minimum wage violations. *See Momin v. Quantierra Advisors LLC*, 2022 WL 2002282, at *3 (S.D.N.Y. June 3, 2022) (finding failure to plead a FLSA minimum wage claim when, *inter alia*, "[t]he plaintiff explicitly does not seek the damages that are available under the FLSA for minimum wage violations, which comprise any amount of unpaid minimum wages and, in certain circumstances, an additional equal amount in liquidated damages"). Plaintiff's allegations, as credited, seek to recover wages at an hourly rate of $125 per hour. *See* Compl. ¶ 21; Hosseini Decl. ¶ 12; Aronauer Decl. Ex. P. That far exceeds

8

the national minimum wage of $7.25 per hour. 29 U.S.C. § 206(a). In short, Plaintiff is instead seeking to improperly "use the FLSA as a vehicle to recoup [her] unpaid, agreed-upon wages." *Barone*, 2022 WL 3139124, at *2 (noting that "the term 'minimum wage' is missing entirely from the Complaint."); *McCormick*, 2020 WL 13572189, at *5 (E.D.N.Y. Aug. 17, 2020) ("Thus, as alleged, McCormick's complaint merely states her employer failed to pay her a salary pursuant to their agreement, not a FLSA claim."); *Shetty v. SG Blocks, Inc.*, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020) ("Shetty does not identify any relevant provision of the FLSA he seeks to recover under, . . . nor could he, because the FLSA does not apply to Shetty's claim that he was not compensated in salary and bonuses far exceeding minimum wage."); *see also Momin*, 2022 WL 2002282, at *2 ("[E]mployees—and particularly highly paid employees—cannot use the FLSA to pursue breach of contract claims."). She has therefore failed to state a claim.

Plaintiff invokes *Nymbus v. Sharp*, 2019 WL 692938 (D. Conn. Feb. 19, 2019), in which the court found that the plaintiff could recover under the FLSA for three months in which he was not paid, even though his salary, which was between $250,000 and $300,000 annually, far exceeded the minimum wage. *Id.* at *7; *see* Aronauer Decl. ¶¶ 52–56. However, in *Nymbus*, the issue was not whether the plaintiff stated a claim for unpaid wages under the FLSA. In fact, there was no minimum wage claim at all in *Nymbus*, but only a FLSA overtime claim. Instead, the issue in *Nymbus* was whether the defendants could invoke FLSA's exemptions for executives as an affirmative defense to plaintiff's FLSA claim. *Id.* at *6; *see also* 29 U.S.C. § 541.602(a). That case is thus inapposite. *See also Momin*, 2022 WL 2002282, at *3 (distinguishing a plaintiff's FLSA unpaid wages claim from the plaintiff's claim in *Nymbus* because "the employer in *Nymbus* did not argue that the employee had failed to state a claim under the FLSA and the court did not conduct any such analysis"). Similarly, *Orton v. Johnny's Lunch*

9

*Franchise, LLC*, 668 F.3d 843 (6th Cir. 2012), which Plaintiff also cites to support her unpaid wages claim, does not speak to whether the plaintiff alleged a cognizable claim under FLSA, but also whether the defendant's failure to pay him for several months rendered him non-exempt under the FLSA. *Id.* at 847–50.

In conclusion, Plaintiff's claim is not an attempt to recover the minimum wage but rather the amount allegedly owed to her under the Employment Agreement. Therefore, it does not constitute a cognizable FLSA minimum wage action.

### B. Plaintiff's Claim for Unpaid Overtime under the FLSA

Plaintiff's second claim under FLSA alleges that "[f]rom October 2020 until the end of her employment, Plaintiff worked *approximately* between 40 and 50 hours per week," Compl. ¶ 26 (emphasis added), that she "worked in excess of forty hours during *some* workweeks" and that "Defendants have willfully failed to pay Plaintiff the appropriate overtime premiums for all hours worked in excess of 40 hours per workweek," *id*. ¶¶ 89–90 (emphasis added). These vague and conclusory allegations fail to state an overtime claim under FLSA.

To state a claim for unpaid overtime under the FLSA, a plaintiff must allege the following: that she worked "(1) compensable hours (2) in excess of 40 hours per week, and (3) that [Defendants] knew that Plaintiff[] [was] working overtime." *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 112 (2d Cir. 2013); *see also Nakhata*, 723 F.3d at 201 ("Plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week."); *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (same). Hours are compensable if they are "an integral and indispensable part of the principal activities for which covered workmen are employed." *Reich v. New York City Transit Authority*, 45 F.3d 646, 650 (2d Cir. 1995) (quoting *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956)). Determining if a

plaintiff's overtime claim is plausible "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *DeJesus*, 726 F.3d at 88 (quoting *Lundy*, 711 F.3d at 114). "Allegations that an employee 'regularly worked' more than forty hours per week are merely legal conclusions that constitute 'little more than a paraphrase of the statute' and cannot, standing alone, establish a plausible claim." *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) (quoting *DeJesus*, 726 F.3d at 89).

The Complaint does not contain sufficient detail about Plaintiff's overtime work to state a claim.[3] For the period of June 2020 to October 2020, Plaintiff appears to concede that she does not have an overtime claim for her work during this period. For these five months, Plaintiff was scheduled to work seven and a half hours per week. Compl. ¶ 21. She alleges that she worked about 30 hours per week on average before October 2020. Hosseini Decl. ¶¶ 14, 19. She thus does not allege that she worked more than forty hours per week from June 2020 to October 2020. Nor does she allege that Defendants were aware of how many hours she was working during this period. Plaintiff also does not seek damages for overtime wages during this period, as evidenced by Aronauer's Declaration. *See* Aronauer Decl. Exhibit P.

Plaintiff also does not sufficiently allege an overtime claim under the FLSA from October 2020 to the end of her employment around June 2021. On or around October 2020, three months after she began working for Defendants, Plaintiff alleges that she agreed to work

---

[3] Plaintiff's Employment Agreement suggests that even if she had worked more than forty hours per week, she may have been exempt from the overtime requirements. The Employment Agreement confusingly states that Plaintiff's "position is classified as ['non-exempt'] and, therefore [not] eligible for overtime." Compl. ¶ 21; Hosseini Decl. Ex. A. Under the FLSA, however, exempt positions are not subject to the law's overtime provisions. 29 U.S.C. § 213(a). The contradictory language in the Employment Agreement indicates that Defendants may not have intended to employ her in a position that would have paid overtime. Further, Plaintiff was employed as Head of Strategy on the executive team, Hosseini Decl. Ex. A, and executives are generally exempt from the FLSA's overtime requirements. *See id*.

11

"more hours." Compl. ¶ 25. She then alleges that she "worked approximately between 40 and 50 hours per week" from October 2020 onwards. *Id.* ¶ 26. Those allegations are insufficient to state a claim for relief under *Lundy* and *Dejesus*. Although "*Dejesus* does not preclude a plaintiff from proceeding with an FLSA claim based on an allegation that her work was consistent across a given time period," *Gayvoronskaya v. Americare, Inc.*, 2018 WL 4378162, at *4 (E.D.N.Y. Mar. 26, 2018), and allegations regarding the number of hours a plaintiff approximately worked can state a claim, *see Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, at *2 (S.D.N.Y. Nov. 25, 2020), a plaintiff must allege at least one workweek in which they worked in excess of 40 hours, *see Lundy*, 711 F.3d at 114. An allegation that Defendant worked approximately between 40 and 50 hours per week does not satisfy that standard. *See Johnson v. Equinox Holdings, Inc.*, 2014 WL 3058438, at *4 (S.D.N.Y. July 2, 2014) (dismissing claim where plaintiff "typically worked between twenty one and fifty hours per week, with an additional three to four hours off the clock"). Plaintiff's allegations are mere conclusory assertions without any supporting factual context indicating whether Plaintiff "worked 'more than forty hours in a given week.'" *Cortese v. Skanska Koch, Inc.*, 2021 WL 429971, at *12 (S.D.N.Y. Feb. 8, 2021) (quoting *Nakahata*, 723 F.3d at 201).

       Plaintiff's Declaration and Aronauer's Declaration appear to assert that Plaintiff worked more hours. Plaintiff's Declaration is ambiguous. It states that after October 2020, she "ended up working on average between 50 and 60 hours each week" Hosseini Decl. ¶ 16, but it then states that she worked "on average 50 hours per week" between October 1, 2020 to February 1, 2021, *id.* ¶ 21, and "approximately 50 hours per week" from February 2021 to the end of her employment, *id.* ¶ 24. Plaintiff's Declaration is also inconsistent on the amount of hours she agreed to work from October 2020 onwards, stating that she "agreed to work between 40 and 50

hours each week" but also that "it was agreed that I would work only 40 hours each week." Hosseini Decl. ¶¶ 15–16.  Aronauer's Declaration sets forth a proposed damages calculation based on the assumptions that Plaintiff worked thirty hours per week from the beginning of her tenure until January 2021 and that she worked fifty hours per week beginning in February 2021 until the end of June that same year.  Aronauer Decl. Ex. P.  Even were the Court to construe Plaintiff's Declaration to state that there were weeks when she worked in excess of 40 hours, a complaint cannot be amended by declaration, and the relief to which Plaintiff is entitled is measured by her factual allegations, *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d at 367.  Particularly given Plaintiff's contradictory submissions, Plaintiff has failed to allege with specificity that there were any work weeks in which she worked more than 40 hours from October 2020 onwards.

Therefore, Plaintiff's allegations of unpaid overtime are insufficient to state a claim under the FLSA, and so this Court accordingly denies default judgment on that claim.

**II.     Supplemental Jurisdiction**

Plaintiff invokes federal jurisdiction under 28 U.S.C. §§ 1331 and 1337, and under the FLSA, 29 U.S.C. §§ 216(b) and 217, and supplemental jurisdiction over the state law claims. Compl. ¶¶ 5–6.  Whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 "is within the sound discretion of the district court." *Lundy*, 711 F.3d at 117 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349–50 (1988)); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 392 (2d Cir. 2007).  A court may decline to exercise supplemental jurisdiction if the court has dismissed all federal claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3).  In each case, courts consider factors that include the "values of judicial economy, convenience, fairness, and comity" to decide whether to exercise supplemental jurisdiction.  *Lundy*, 711 F.3d at 117–18.  Although denial of default judgment is not the same as dismissal of the plaintiff's claims, these factors weigh against hearing state law claims when default judgment has been denied.  *See Guanglei Jiao v. Shang Shang Qian Inc.*, 2020 WL 6370148, at *12 (E.D.N.Y. Aug. 11, 2020) ("[C]ourts in this district have treated denial of default judgment on a plaintiff's FLSA claims to have the same effect as dismissing the FLSA claims.") (citing cases).

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. The Court is providing Plaintiff with leave to amend her Complaint and to again move for default judgment. The case is still at its early stages; if Plaintiff is able to adequately plead her claims, including alleging that she was an employee and that she worked in excess of 40 hours, judicial economy will be better served by a decision that addresses both the federal and state claims.  *See Guanglei Jiao*, 2020 WL 6370148, at *12; *see also Bustillos v. Academy Bus, LLC*, 2014 WL 116012, at *5 (S.D.N.Y. Jan. 13, 2014) (Nathan, J.) (declining to exercise supplemental jurisdiction over a plaintiff's state law claims, including the claims under the NYLL, when the federal claims had been dismissed).  Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYLL and other state law claims at this time.

## CONCLUSION

The motion for default judgment is DENIED without prejudice, and Plaintiff is given 30 days to file an amended complaint in accordance with, but not limited to, the issues identified in this Opinion.

The Clerk of Court is respectfully directed to close Dkt. No. 33.


SO ORDERED.

Dated: February 21, 2023
       New York, New York

_____
                    LEWIS J. LIMAN
                    United States District Judge