UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
: 
MARYAM DAVANI HOSSEINI,                                     :
:
                            Plaintiff,                      :
:
            -v-                                             :
:
MIILKIINA LLC and NADIA AZMY, individually,                :
:
                            Defendants.                     :
:
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/27/2023_

22-cv-1459 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Maryam Hosseini ("Plaintiff") commenced this action on February 22, 2022 against Miilkiina LLC ("Miilkiina") and Nadia Azmy ("Azmy," and together with Miilkiina, "Defendants"). Dkt. No. 1. On March 21, 2023, Plaintiff filed an Amended Complaint. Dkt. No. 41. In her Amended Complaint, Plaintiff alleges violations of the Fair Labor Standards Act of 1938 ("FLSA"), 28 U.S.C. §§ 201 *et seq.*, and the New York Labor Law ("NYLL"), §§ 190 *et seq*. *Id.* ¶¶ 1–4. Plaintiff also pleads a claim for breach of contract in the alternative. *Id.* ¶ 5. She seeks damages, prejudgment interest, statutory penalties, costs, and reasonable attorneys' fees. *Id.* at 13–14.

On May 25, 2023, Plaintiff filed this motion for a default judgment, Dkt. No. 42, as well as accompanying declarations of Jacob Aronauer, Dkt. No. 43, and the Plaintiff, Dkt. No. 44. For the reasons provided below, the Court grants Plaintiff's motion.

## BACKGROUND

The following facts, drawn from the Amended Complaint and the documents incorporated by reference therein, are accepted as true for purposes of this motion. *See*

*Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam).

Miilkiina is a "creative agency and multimedia platform" that serves creative professionals. Dkt. No. 41 ¶ 20.  Azmy has led Miilkiina since its inception as the company's CEO.  *Id.* ¶¶ 16–17.  On June 1, 2020, after three interviews with Azmy, Plaintiff received both an offer to join Miilkiina as its Head of Strategy and an accompanying employment agreement. *Id.* ¶¶ 13, 23.

Under her employment agreement, Plaintiff agreed to work "30 hours a month, 7.5 hours a week," in exchange for two and a half shares in Miilkiina each month—*i.e.*, a .1% ownership interest per month and 1.2% interest per year.  *Id.* ¶ 26.  The agreement also specified that the cash value of those shares would be $3,750 per month and $45,000 per year.  *Id.*  In addition, Plaintiff received a $500 incentive payment upon signing the agreement.  *See id.* ¶ 46.

As Miilkiina's Head of Strategy, Plaintiff served on the executive team and reported directly to Azmy.  *Id.* ¶¶ 24, 29.  Plaintiff "provide[d] creative strategy ideas" for the company. *Id.* ¶ 30.  Although she was "a remote worker," *id.* ¶ 32, Plaintiff's position required her to "timely respond to emails" and "answer phone calls [from] across Europe and the Middle East," *id.* ¶ 31.

Plaintiff's hours immediately exceeded those envisioned in her employment agreement. Despite her contractual obligation to work 30 hours per month, *id.* ¶ 26, Plaintiff worked 40 hours per week from June through September of 2020, *id.* ¶ 33.  But, aside from the $500 incentive payment, Plaintiff did not receive any compensation during that time.  *See id.* ¶ 47.

Because she was so "productive and efficient," Defendants agreed to increase Plaintiff's compensation to five shares a month in October 2020.  *Id.* ¶¶ 34–35.  Plaintiff repeatedly

requested a revised employment agreement, memorializing that arrangement, to no avail.  *Id.* ¶¶ 43–44.

From October 2020 through June 2021, Plaintiff worked an average of 50 hours per week.  *Id.* ¶ 38.  During those months, Defendants paid Plaintiff $4,432.62 in cash, *see id.* ¶¶ 45–46, but did not otherwise "provide Plaintiff with the monetary value of her shares or vesting schedule," *id.* ¶ 47.

Defendants' failure to compensate Plaintiff eventually reached a breaking point.  In May 2021, Azmy informed Plaintiff that Miilkiina "had used all its revenue and could no longer pay Plaintiff" in cash.  *Id.* ¶ 48.  As she believed other employees were still receiving salaries, Plaintiff confronted Azmy and "request[ed] to be paid for her labor."  *Id.* ¶¶ 50–51.  The Plaintiff, Azmy, and Miilkiina's Chief Marketing Office Maria Al Sadek held a meeting on June 29, 2021, in which Plaintiff "articulated her concerns" that Defendants had not compensated her.  *Id.* ¶ 52.  Azmy offered a tearful apology, *id.* ¶ 52, and sent Plaintiff an email the next day promising that "[a]ll agreed-upon compensation has been and will continue to be honored," *id.* ¶ 54.  Plaintiff nevertheless stopped working for Defendants that day.  *Id.* ¶ 36.  Although Defendants never formally terminated her, *id.* ¶ 40, Plaintiff discovered on August 11, 2021 that the content she had created on Miilkiina's servers had been deleted, *id.* ¶ 41, and that she could no longer access company records or her work email, *id.* ¶ 42.

## PROCEDURAL HISTORY

Plaintiff filed her complaint on February 22, 2022.  Dkt. No. 1.  Plaintiff served Miilkiina on March 3, 2022, Dkt. No. 12, and Azmy on April 2, 2022, Dkt. No. 13.  The Clerk of Court issued certificates of default against Miilkiina and Azmy on April 21 and April 28, 2022, respectively.  Dkt. Nos. 19, 25.

Plaintiff filed her first motion for default judgment on August 16, 2022.  Dkt. No. 33.

The Court denied that motion without prejudice on February 21, 2023.  Dkt. No. 40.  Because

Plaintiff's complaint failed to state a claim under the FLSA, the Court declined to exercise

supplemental jurisdiction over Plaintiff's remaining claims under New York law.  *Id.* at 13.

On March 21, 2023, Plaintiff filed an Amended Complaint.  Dkt. No. 41.  She filed the

instant motion for default judgment on May 25, 2023.  Dkt. No. 42.  Defendants have not

responded.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the

entry of judgment against a party who fails to plead or otherwise defend: the entry of a default,

and the entry of a default judgment.  *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a

defendant has, through its failure to defend the action, admitted liability to the plaintiff."  *City of

New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see also* Fed. R. Civ.

P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of

liability into a final judgment that terminates the litigation and awards the plaintiff any relief to

which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn

Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b).  Whether entry of default judgment at the

second step is appropriate depends upon whether the well-pleaded allegations against the

defaulting party establish liability as a matter of law.  *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a

complaint, because a party in default does not admit conclusions of law, "a district court need not

agree that the alleged facts constitute a valid cause of action."  *Id.* (citation omitted); *see Spin

Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ.

4

55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations are sufficient to establish the [defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 85 (2d Cir. 2009).

The legal sufficiency of a non-defaulting party's claims "is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019) (Nathan, J.). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and Plaintiffs "must therefore substantiate [their] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017). "To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing." *Fonz, Inc. v. City Bakery Brands, LLC*, 2021 WL 5235190, at *3 (S.D.N.Y. Sept. 27, 2021), *report and recommendation adopted*, 2021 WL 4803821 (S.D.N.Y. Oct. 13, 2021); *see also Bricklayers & Allied Craftworkers Loc. 2*, 779 F.3d at 189. "An inquest into damages may be conducted on the papers, without an evidentiary hearing where there is a sufficient basis on which to make a calculation." *Fonz, Inc.*, 2021 WL 5235190, at *3; *see also Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

**DISCUSSION**

As Miilkiina's Head of Strategy, Plaintiff qualified as an employee for purposes of FLSA § 203(e) ("[E]mployee means any individual employed by an employer."),[1] and NYLL § 651(5) ("[A]ny individual employed or permitted to work by an employer in any occupation.").  While Plaintiff's employment agreement entitled her to shares in Miilkiina, the mere fact that she received equity-based compensation did not render her a "putative co-owner," instead of an employee.  *Godoy v. Rest. Opportunity Ctr. of N.Y., Inc.*, 615 F. Supp. 2d 186, 195 (S.D.N.Y. 2009).  As an initial matter, Plaintiff alleges that she never received the promised shares.  *See* Dkt. No. 41 ¶ 47.  Even if she had, Plaintiff's employment agreement guaranteed their cash value, so she did not assume the risks of Miilkiina's losses and liabilities.  *Cf. Godoy*, 615 F. Supp. 2d at 195.  Based on the allegations of the Amended Complaint, she was not an "owner and investor."  *Ivanov v. Builderdome, Inc.*, 2021 WL 2554620, at *9 (S.D.N.Y. June 22, 2021).  She did not enjoy a "right to share in management."  *Godoy*, 615 F. Supp. 2d at 195.  She "had no subordinates" and her "creative strategy ideas . . . needed to be approved by her superiors."  Dkt. No. 41 ¶¶ 25, 30.  The "economic realities" therefore demonstrate that Plaintiff was "an employee for purposes of the FLSA and NYLL."  *Perry v. Furman's Lab LLC*, 2018 WL 6576050, at *3 (E.D.N.Y. Aug. 31, 2018), *report and recommendation adopted*, 2018 WL 5801539 (E.D.N.Y. Nov. 6, 2018).

---

[1] The Court does not address whether Plaintiff was an exempt employee for purposes of the FLSA.  "The application of an exemption under the FLSA is an affirmative defense, and an employer bears the burden of proving that its employees fall within an exempted category of the Act.  Like other affirmative defenses, a Defendant's willful default constitutes a waiver of any affirmative defenses."  *Gumaneh v. Vilano Emp. Servs., Inc.*, 2023 WL 5715613, at *4 (S.D.N.Y. Sept. 5, 2023) (cleaned up); *see also Garcia v. 2390 Creston Realty LLC*, 2023 WL 4849889, at *7 n.2 (S.D.N.Y. July 28, 2023); *Burns v. Scott*, 635 F. Supp. 3d 258, 275 n.2 (S.D.N.Y. 2022).

Defendants are employers under FLSA § 203(a)(d) (persons that act "directly or indirectly in the interest of an employer in relation to an employee") and NYLL § 651(6) ("any individual, partnership . . . [or] corporation . . . acting as employer"). "When it comes to 'employer' status under the FLSA, control is key." *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014) (quoting *Lopez v. Acme Am. Envtl. Co., Inc.*, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012)); *see also Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA.'" (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n. 13 (S.D.N.Y.2010)). Miilkiina enjoyed both a formal right to direct Plaintiff's actions under her employment agreement, *see* Dkt. No. 41 ¶ 26, and functional control over Plaintiff during her work hours, *see id.* ¶ 31. Likewise, as Miilkiina's CEO and Plaintiff's direct superior, Azmy exercised "control over [the] company's actual operations in a manner that relate[d] to [the] plaintiff's employment." *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018) (per curiam) (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013)). Azmy hired Plaintiff, supervised her strategic proposals, and determined her pay. Dkt. No. 41 ¶¶ 37, 48, 54; *see Tapia*, 906 F.3d at 61. Thus, both Miilkiina and Azmy are employers under the FLSA and the NYLL.

Plaintiff alleges that Defendants violated both the FLSA and the NYLL by failing to pay her overtime. The FLSA forbids an employer from having an employee work more than forty hours per workweek "unless such employee receives compensation . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The NYLL imposes the same overtime requirement. *See Rosario v. Fresh Smoothies LLC*, 2021 WL 5847633, at *3 (S.D.N.Y. Dec. 9, 2021) (citing 12 N.Y.C.R.R. § 142-2.2). The Court's prior

opinion held that Plaintiff failed to state an overtime claim because she did not "allege at least one workweek in which [she] worked in excess of 40 hours." Dkt. No. 40 at 12. But Plaintiff's Amended Complaint cures that deficiency, averring that "for each week in the month of February 2021, Plaintiff worked at least 50 hours each week." Dkt. No. 41 ¶ 42; *see Herrera v. Comme des Garcons, Ltd.*, 2023 WL 6798604, at *4 (2d Cir. Oct. 16, 2023) ("[P]laintiffs must sufficiently allege '40 hours of work in a given workweek.'" (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013))). Because Defendants did not provide Plaintiff overtime compensation for her work in excess of 40 hours per week, *id.* ¶¶ 76, 82, they "straightforwardly violated the FLSA and New York overtime requirements," *Castillo v. Isakov*, 2023 WL 6664552, at *4 (S.D.N.Y. Oct. 12, 2023).

Plaintiff also seeks a default judgment against the Defendants on her wage notice and wage statement claims under New York law. Under the NYLL, employers must furnish wage notices to their employees, disclosing the rate of pay, NYLL § 195(1)(a), and wage statements, describing the dates of work covered, the applicable rates of pay, as well as relevant deductions, allowances, and other information, *id.* § 195(3). Despite those statutory requirements, Plaintiff alleges that Defendants never provided her with wage notices or wage statements. Dkt. No. 41 ¶¶ 66, 70. Consequently, Defendants violated the NYLL's wage notice and wage statement provisions. *See Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 327–28 (S.D.N.Y. 2021), *report and recommendation adopted*, 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022).

According to Plaintiff, Defendants are further liable under the NYLL because they did not "pay Plaintiff her earned wages." Dkt. No. 41 ¶ 63. Specifically, Plaintiff argues that NYLL § 191 entitles her to the compensation promised in her employment agreement. *See* Dkt. No. 43 ¶ 79. Section 191(1)(d) of the NYLL provides: "A clerical and other worker shall be paid the

wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." NYLL § 191(1)(d). Some courts have interpreted the former clause as permitting the "recovery of unpaid wages at the agreed-upon rate, even if it exceeds the minimum wage." *Ilagorre v. LT Burger, Inc.*, 2023 WL 4532445, at *2 n.2 (E.D.N.Y. July 13, 2023) (quoting *Shetty v. SG Blocks, Inc.*, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020)). But that interpretation divorces § 191(1)(d)'s first phrase from its second phrase, contrary to the "'cardinal rule' of statutory construction that 'statutory language must be read in context since a phrase gathers meaning from the words around it.'" *L.S. v. Webloyalty.com, Inc.*, 954 F.3d 110, 115 (2d Cir. 2020) (quoting *United States v. Watkins*, 940 F.3d 152, 165–66 (2d Cir. 2019)). Construing § 191(1)(d) as whole, the Second Circuit observed that the provision "by its terms only involves the timeliness of wage payments, and does not appear to afford to plaintiffs any substantive entitlement to a particular wage." *Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010). The Court therefore joins the other courts in this District that have held § 191(1)(d) does not entitle an employee to the compensation promised in her employment agreement. *See Savor Health, LLC v. Day*, 2022 WL 912236, at *7 (S.D.N.Y. Mar. 29, 2022); *Clybourn v. Spiderbands LLC*, 2018 WL 6528234, at *4 (S.D.N.Y. Dec. 12, 2018).

Miilkiina's failure to compensate Plaintiff pursuant to her employment agreement is nevertheless actionable as a breach of contract. Plaintiff's Amended Complaint pleads breach of contract in the alternative. Dkt. No. 41 ¶¶ 85–90. And "courts in this Circuit have permitted plaintiffs to proceed on such breach of contract claims for straight wages in conjunction with FLSA and NYLL overtime claims." *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 454 (E.D.N.Y. 2014) (collecting cases). The employment agreement here stipulates that it is

"governed by the laws of the State of New York."  Dkt. No. 44 at ECF p. 12.  Under New York law, a plaintiff claiming breach of contract must prove: "(1) the formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) resulting damages."  *Mass v. Greg Cohen Promotions, LLC*, 2023 WL 2267354, at *4 (S.D.N.Y. Feb. 28, 2023).  Miilkiina made an offer by sending Plaintiff an employment agreement.  Dkt. No. 41 ¶ 23.  The parties then formed a contract when Plaintiff accepted that offer by commencing employment with Miilkiina.  *Id.* ¶¶ 25, 27–28.  Plaintiff performed her obligations under that contract as she worked far more than the requisite 30 hours each month as Miilkiina's Head of Strategy.  *Id.* ¶¶ 30–31.  By contrast, Miilkiina failed to uphold its contractual duty to provide Plaintiff her agreed-upon compensation.  *Id.* ¶ 47.  Miilkiina's non-performance resulted in damages to Plaintiff by depriving her of the compensation she had earned.  *See Burns v. Scott*, 635 F. Supp. 3d 258, 278 (S.D.N.Y. 2022).  Accordingly, Miilkiina is liable to Plaintiff for breach of contract.

Plaintiff claims Azmy is similarly liable for breach of contract.  Dkt. No. 41 ¶ 90.  But the allegations in the Amended Complaint do not justify a departure from the general rule that "an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement."  *New World Trading Co. v. Avshalomov*, 2012 WL 4378055, at *4 (S.D.N.Y. Sept. 24, 2012) (quoting *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991)).  Plaintiff does not aver that Azmy entered the employment agreement in an individual capacity, nor that Azmy otherwise expressed an intention to assume personal liability under the employment agreement.  *See id.*  As a result, Azmy is not liable for Miilkiina's breach of contract.

In an effort to avoid that conclusion, Plaintiff asserts Azmy is jointly and severally liable by virtue of § 630(a) of the New York Business Corporation Law.  *See* Dkt. No. 41 ¶¶ 98–101. Section 630(a) states:

> The ten largest shareholders . . . of every domestic corporation or of any foreign corporation, when the unpaid services were performed in the state, no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation. . . .  An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services.

N.Y. Bus. Corp. Law § 630(a).  Even assuming § 630(a) applies to LLCs like Miilkiina, Plaintiff's attempt to hold Azmy individually liable under that provision is premature.  "By the explicit language of the statute, the personal liability of the ten largest shareholders of a corporation is not only contingent on a judgment against the corporation for employee compensation, but is the subject of a separate action commenced within 90 days of the judgment against the corporation."  *Wing v. E. River Chinese Rest.*, 884 F. Supp. 663, 668 (E.D.N.Y. 1995).  In her Amended Complaint, Plaintiff alleges that she "fully complied with the prerequisites of New York Business Corporation Law § 630," Dkt. No. 41 ¶ 101, but that "conclusory allegation[]" is insufficient to obtain a default judgment, *UNITE HERE Ret. Fund v. Edward Vill. Grp., LLC*, 2021 WL 5414972, at *5 (S.D.N.Y. Nov. 16, 2021); *see also E.A. Sween Co., Inc. v. A&M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order).  Critically, the Amended Complaint does not aver that Plaintiff has obtained a judgment against Miilkiina for unpaid wages.  Until Plaintiff does, she cannot avail herself of § 630(a) in order to hold Azmy individually liable for breach of contract.

Thus, Defendants are jointly and severally liable to Plaintiff for their violations of the FLSA and NYLL's overtime provisions as well as the NYLL's wage notice and wage statement requirements. *See Schalaudek v. Chateau 20th St. LLC*, 2017 WL 1968677, at *1 (S.D.N.Y. May 11, 2017) ("Defendants who qualify as employers under the FLSA or NYLL are jointly and severally liable for damages awarded under those statutes."); *Canelas v. A'Mangiare Inc.*, 2015 WL 2330476, at *6 (S.D.N.Y. May 14, 2015). Miilkiina is also liable to Plaintiff for breaching her employment contract. As Plaintiff is entitled to default judgment on those claims, the Court must determine appropriate remedies. Federal Rule of Civil Procedure 55(b)(2) permits a court to "conduct hearings or make referrals" to "determine the amount of damages" for a default judgment. Fed. R. Civ. P. 55(b)(2). However, "a hearing is not required where a sufficient basis on which to make a calculation exists." *Maldonado v. La Nueva Rampa, Inc.*, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012). A hearing or referral is unnecessary here because Plaintiff has submitted sufficiently "detailed affidavits and documentary evidence" for the Court to calculate her damages. *Capital Inv. Pty, LLC v. Onestone Capital, LLC*, 2023 WL 7004164, at *2 (S.D.N.Y. Oct. 24, 2023) (quoting *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)). Defendants received both notice that the Court would hold a default judgment hearing, Dkt. Nos. 36–37, and the opportunity to attend that hearing and defend against Plaintiff's claims. Yet Defendants failed to do so. The Court therefore determines Plaintiff's damages based on her documentary evidence, without a further hearing.

First, Plaintiff is entitled to $73,125.00 in unpaid overtime wages and an additional $73,125.00 in liquidated damages under FLSA. Although Defendants violated the overtime requirements of both the FLSA and NYLL, Plaintiff "may not recover twice" by collecting

awards under both statutes.  *Sanango v. Ruby Nails Tarrytown, Inc.*, 2023 WL 2707329, at *3 (S.D.N.Y. Mar. 30, 2023) (quoting *Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, 2016 WL 8650464, at *6 (S.D.N.Y. Nov. 7, 2016)); *see also Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam).  Consequently, Plaintiff can recover overtime damages exclusively "under one statute."  *Astudillo v. Fusion Juice Bar Inc.*, 2023 WL 3802754, at *8 (E.D.N.Y. Mar. 23, 2023), *report and recommendation adopted*, 2023 WL 5436131 (E.D.N.Y. Aug. 23, 2023). Here, "plaintiff seeks [overtime] damages only under the FLSA," *Tapia v. Be Optical LLC*, 2018 WL 2078478, at *8 (E.D.N.Y. Feb. 13, 2018), *report and recommendation adopted*, 2018 WL 2995608 (E.D.N.Y. June 14, 2018); *see* Dkt. No. 43 at ECF pp. 68–69, so the Court calculates an appropriate overtime award under the FLSA, instead of the NYLL.  Federal law dictates that an employer who violates the FLSA's overtime provisions "shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C.A. § 216(b).  Plaintiff's regular wage was $3,750 per 30 hours, *i.e.*, $125 per hour.  Dkt. No. 44 ¶ 18; *see Moon v. Kwon*, 248 F. Supp. 2d 201, 230 (S.D.N.Y. 2002) (Lynch, J.) ("While an employer may agree to compensate an employee with a weekly, monthly, or annual salary, an employee's regular rate is nevertheless an hourly rate of pay, determined by dividing the employee's weekly compensation by the number of hours for which that compensation is intended.").  Plaintiff states that from October 2020 through June 2021, she "averaged 50 hours per week," such that she worked 10 overtime hours for each of those 39 weeks.  Dkt. No. 41 ¶ 38.  Multiplying those 390 hours by Plaintiff's overtime wage of $187.50 per hour yields a total of $73,125.00 in unpaid overtime wages.  *See Toramall v. Manhattan Constr. Grp. LLC*, 2020 WL 2763737, at *3 (S.D.N.Y. May 28, 2020), *report and recommendation adopted*, 2020 WL 6482796 (S.D.N.Y. Nov. 4, 2020); *Pineda v.*

*Tokana Cafe Bar Restorant Inc.*, 2017 WL 1194242, at *1 (S.D.N.Y. Mar. 30, 2017).

Additionally, Plaintiff is entitled to "liquidated damages equal in amount to [her] actual

damages" from the Defendant's overtime violations.[2]  *Barfield v. N.Y.C. Health & Hosps. Corp.*,

537 F.3d 132, 150 (2d Cir. 2008).  The Court therefore awards Plaintiff $73,125.00 in liquidated

damages under the FLSA.[3]

      Second, Plaintiff is entitled to $10,000 in statutory penalties for Defendants' violations of

the NYLL's wage notice and wage statement requirements.  Plaintiff alleges that Defendants

never provided her with a wage notice or wage statement during her thirteen-month tenure at

Miilkiina.  Dkt. No. 41 ¶¶ 66, 70.  "Since Defendants failed to provide Plaintiff[] with the

required wage notice for more than 100 days, and failed to provide Plaintiff[] with the required

wage statements for more than twenty days," she is entitled to "the maximum statutory damage

award of $5,000 for violations of NYLL § 195(1) and $5,000 for violations of NYLL § 195(3),

for a total of $10,000 in statutory damages each."  *Diaz v. Rene French Cleaners, Inc.*, 2022 WL

4646866, at *11 (E.D.N.Y. Aug. 29, 2022); *see also Ayala v. P&N Cuisine Inc.*, 2022 WL

3327544, at *4 (S.D.N.Y. July 13, 2022); *Khan v. AC Auto., Inc.*, 2021 WL 2036706, at *4

(S.D.N.Y. May 21, 2021).

---

[2] Courts have "discretion to deny liquidated damages where [an] employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the FLSA."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 502 (S.D.N.Y. 2017) (citations and quotations omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).  But "[d]efendants that fail to respond to a motion for default judgment obviously fail to carry this burden."  *Pineda*, 2017 WL 1194242, at *3.

[3] While Plaintiff also seeks prejudgment interest on her FLSA overtime claim, Dkt. No. 41 ¶ 79, "[i]t is well settled that in an action for violations of the [FLSA,] prejudgment interest may not be awarded in addition to liquidated damages," *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 379 (E.D.N.Y. 2022) (quoting *Begum v. Ariba Disc., Inc.*, 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)).

Third, Plaintiff is entitled to attorney's fees and costs.  "Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Almanzar*, 2016 WL 8650464, at *12 (citing *Najnin v. Dollar Mountain, Inc.*, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015)); *see* FLSA § 216(b); NYLL § 198(1-a).  As Defendants violated the FLSA and NYLL, Plaintiff can recover reasonable attorney's fees and costs.  Plaintiff's counsel has submitted documentation demonstrating that Plaintiff incurred $717 in costs and $6,079.70 in reasonable legal fees.[4]  Dkt. No. 43 at ECF pp. 71–73. Accordingly, the Court awards Plaintiff those amounts.

Finally, the Court awards Plaintiff $275,067.38 in contractual damages against Miilkiina. Under New York law, "damages for breach of an employment contract are limited to the unpaid salary to which the employee would be entitled under the contract less the amount by which he should have mitigated his damages."  *Barsoumian v. Univ. at Buffalo*, 2013 WL 3821540, at *4 (W.D.N.Y. July 23, 2013) (quoting *Quinn v. Straus Broad. Grp., Inc.,* 309 F. Supp. 1208, 1209–10 (S.D.N.Y.1970)), *aff'd*, 2015 WL 13926794 (2d Cir. Feb. 20, 2015); *see Tendler v. Bais Knesses of New Hempstead, Inc.*, 977 N.Y.S.2d 747, 748 (2d Dep't 2013).  To account for any mitigation of damages "[i]n cases involving breach of an employment contract, plaintiff's damages must be reduced by what he earned."  *Wilkinson v. R. MacDonald Elec., Inc.*, 2006 WL 8456460, at *3 (W.D.N.Y. July 10, 2006); *see Sudul v. Comput. Outsourcing Servs., Inc.*, 917 F. Supp. 1033, 1046 (S.D.N.Y. 1996).  Plaintiff's employment agreement with Miilkiina entitled her to compensation of $125 per hour.[5]  *See Wilkinson*, 2006 WL 8456460, at *3 (awarding

---

[4] That documentation also refers to a separate invoice for $5,865.54.  Dkt. No. 43 at ECF p. 72. But the Court cannot determine whether that invoice is reasonable or warranted, as the submitted document simply provides an aggregate amount due under the omitted invoice, without enumerating any specific costs or legal services that justify the stated sum.

[5] Notably, Plaintiff does not seek any unpaid wages based on Miilkiina's agreement to increase

breach of contract damages equal to "the value of [promised] benefits"). She cannot recover contractual damages for hours she worked in excess of 40 per week, because such an award would be duplicative of her FLSA overtime claim. *See Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 470 (E.D.N.Y. 2011). However, Plaintiff is entitled to the value of her agreed-upon compensation for non-overtime hours—namely the first 40 hours she worked for each of the 56 weeks of her employment with Miilkiina. Multiplying those 2,240 hours by Plaintiff's $125 regular wage yields a *prima facie* award of $280,000. But the Court must reduce that amount by the $4,432.62 in cash wages Plaintiff received from Miilkiina. Dkt. No. 44 ¶ 25. Plaintiff's total contractual damages are therefore $275,567.38.

In sum, Plaintiff is entitled to a default judgment award against Defendants for $73,125.00 in unpaid overtime, $73,125.00 in FLSA liquidated damages, $10,000 in NYLL statutory penalties, and $6,796.70 in costs and attorney's fees. The Court also awards Plaintiff $275,567.38 in contractual damages against Miilkiina.

The motion for default judgment is GRANTED. The Clerk of Court is respectfully directed to close Dkt. No. 42.

Plaintiff is directed to file a proposed judgment consistent with this Opinion and Order by November 6, 2023.


SO ORDERED.

Dated: October 27, 2023
      New York, New York                    _____
                                             LEWIS J. LIMAN
                                             United States District Judge

---

her compensation to five shares a month in October 2020. *See* Dkt. No 43 at ECF p. 69.